# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| STERLING MORTENSEN, | Case No. 1:10-cv-00234-EJL-REB |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., et al., | |
| Defendants. | |

Pending for a Report and Recommendation is a Motion to Dismiss (Dkt. 111) filed by

Defendants America's Servicing Company ("ASC"), Northwest Trustee Services ("Northwest"),

and Mortgage Electronic Registration Systems, Inc. ("MERS").[1]  The Court finds that the

---

[1]  Several defendants initially named in this lawsuit have either been dismissed or removed as defendants by Plaintiff in one or more of his amended complaints.  Those include: HSBC Bank, Routh Crabtree & Olsen, Foreclosure Expediters, LandAmerica Transnation, and GMAC Mortgage.  *See* Dkts. 102, 106, 107.  Although the Court's CM/ECF system states that Defendant Nomura Asset Acceptance Corporation ("Nomura") was "terminated" with the filing of the Complaint on August 16, 2011, Nomura is named as a defendant in the latest Complaint, filed on August 16, 2011.  *See* Dkt. 106, p. 1.  However, Nomura was omitted from the Complaint filed on March 29, 2011.  Dkt. 73, p. 1.  In granting leave to file an amended complaint, the Court noted that the only remaining defendants (*i.e.*, those included in the March 29th proposed amended complaint) were America's Servicing Company, Northwest Trustee Service, Mortgage Electronic Services, Inc., and Silver State Financial Services, Inc.  *See* Dkt. 102, p. 7.  Although the Court did not specifically mention Nomura in that Order, the Order stated that any amended complaint should remove the Defendants not named in Plaintiff's proposed amended complaint (Dkt. 73) unless the remaining defendants filed an objection (which they did not).  Regardless, for reasons similar to the other Defendants, as discussed below, Plaintiff's Complaint fails to state a claim for relief against Nomura.  The only other remaining defendant that did not join in the Motion to Dismiss is Silver State Mortgage; it has not responded to the Complaint.  Again though, for unknown reasons, the Court's docket lists Silver State as "*TERMINATED: 08/16/2011*".  However, Silver State has been named as a

decisional process would not be significantly aided by oral argument and, thus, will report to the

District Court on this matter having considered the written motions, briefs, and record without

oral argument. *See* D. Idaho L. Civ. R. 7.1(d). Having reviewed the record, and for the reasons

discussed herein, the Court hereby enters the following report and recommends that the District

Court grant Defendants' Motion.

## I. BACKGROUND

On or about August 10, 2006, Plaintiff obtained a home refinance loan[2] from Silver State

Mortgage ("Silver State"), for 4540 Columbine, Boise, Idaho (the "Property"). Compl.[3] ¶¶ 3.0,

3.1. Plaintiff also executed a Deed of Trust, which was recorded in Ada County on August 15,

2006. The Deed of Trust identified Silver State as the Lender, Land America Transnation as the

trustee, and MERS as the beneficiary and "nominee for lender, and the lender's successors and

_____

Defendant in each iteration of Plaintiff's Complaint and remains a named Defendant at this time.
Although Silver State has not filed a Motion to Dismiss, the Court will consider whether Plaintiff
has stated a claim for relief against Silver State. "Pursuant to Rule 12(b)(6), a court may dismiss
a claim sua sponte for failure to state a claim when the plaintiff 'cannot possibly win relief.'"
*Macawile v. Pro30 Funding*, No. 2:12–CV–00567–MCE–DAD, 2012 WL 2912349, *3
(E.D.Cal. July 16,2012) (quoting *Omar v. Sea–Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir.
1987)). A court may do so even when the defendant has not filed a motion to dismiss. *Id. See
also Smith v. Wachovia Mortg. Corp.*, No. 3:12–cv–26–RCJ–VPC, 2012 WL 3222144, *5
(D.Nev. Aug. 3, 2012) (sua sponte dismissing "all claims against the remaining defendants
without leave to amend because Smith has failed to state a claim against them"); *Gould v. Las
Animas, Colorado County Court*, No. 1:12–cv–00221–BLW, 2012 WL 3440135, 2 (D.Idaho
Aug. 13, 2012).

[2] This "loan" refers to two transactions with the same lender. Plaintiff borrowed
$320,000 and also $80,000 to refinance the home. *See* Compl. ¶ 3.1. The Deeds of Trust for
both were identical. *Id.* at ¶¶ 3.2 & 3.3. For ease of reference, and because the parties generally
refer to both loans as one transaction, the Court has referred to the transaction as a unified event.

[3] The Complaint referred to throughout this Report and Recommendation is the final
amended complaint, filed at Docket Number 106 and titled "Verified Amended Complaint for
Declaratory and Injunctive Relief, and Damages".

assigns."  Compl. ¶ 3.2; O'Neill Aff., Ex. A (Dkt. 111-2).  Silver State transferred servicing of

the loan to GMAC Mortgage Corporation, then the servicing rights were transferred to ASC.

Compl. ¶¶ 3.4, 3.6.

      In June 2008, Plaintiff alleges that due to financial hardship and a "drop in the value of

homes" in the Boise area generally, he called ASC to discuss loan options .  *Id.* ¶¶ 3.7 – 3.11.

Plaintiff made his last loan payment in July of 2008.  *Id.* ¶¶ 3.10, 3.11.  On November 26, 2008,

MERS, as the Deed of Trust beneficiary and the lender's nominee, appointed Northwest as

successor trustee.  Compl., ¶ 3.27.  This Appointment of Successor Trustee was recorded on

December 2, 2008.  Dkt. 73-3[4], Ex. U.  Also executed on November 26, 2008 and then recorded

on December 2, 2008, was an Assignment of Deed of Trust, in which MERS as beneficiary

under the Deed of Trust granted all its beneficial interest, together with the note or notes

described in the Deed of Trust, to HSBC Bank USA ("HSBC").[5]  Compl., ¶ 3.28; Dkt. 73-3, Ex.

V.  HSBC received this interest as trustee for Nomura.  *Id.*  On December 2, 2008, Northwest

recorded a Notice of Default for the Property.  Compl., ¶ 3.29.

      On December 31, 2008, Plaintiff filed for bankruptcy.  *Id.* ¶ 3.33.  On March 4, 2009, the

bankruptcy court granted HSBC relief from the bankruptcy stay.  *Id.* ¶ 3.35.  Following a

non-judicial foreclosure sale, a Trustee's Deed conveying the Property to HSBC, as trustee for

Nomura, was issued and recorded on November 3, 2009.  First O'Neill Aff., ¶ 7 & Ex. F (Dkt.

---

    [4] This document is a prior verison of the amended complaint, that was verified and included several exhibits referred to in, but not attached to, the most recent version of the complaint.

    [5] Earlier in these proceedings the Court determined that Plaintiff did not set out sufficient facts to support his claims against HSBC Bank, Routh Crabtree & Olsen, Foreclosure Expediters, LandAmerica Transnation, and GMAC Mortgage.  (Dkt. 102).

31).   On December 11, 2009, HSBC and other entities filed a case in state court for eviction,

ejectment, and restitution of property against Plaintiff and other occupants of the Property, Ada

County Case No. CVOC2009-23591.[6]   Compl. ¶ 3.74.   Ada County Court District Judge Thomas

F. Neville issued several orders upholding the validity of the trustee's sale and rejecting

Plaintiff's allegations that the foreclosure was wrongful or that he retained an interest in the

Property.   *See* O'Neill Aff., Exs. E, F, and G (Dkt. 111-2).   On April 30, 2010, one week before

Plaintiff filed this case, Judge Neville, having granted a motion for judgment on the pleadings,

entered judgment in favor of HSBC Bank and the other plaintiffs in that case and against

Plaintiff and the other occupants of the house "for restitution of" the Property.   O'Neill Aff., Ex.

E (Dkt. 111-2).   Although Plaintiff requested reconsideration and filed a variety of motions in

that case, Judge Neville denied all of those motions[7] and Plaintiff did not timely appeal the

judgment in that case.

Complicating matters, on October 12, 2009, Plaintiff executed a Quitclaim Deed

purporting to transfer the Property to Brenda Burton and Steve Fritts.   (Dkt. 34-1, Ex. A). That

same day, Burton and Fritts gave a warranty deed for the property to the Sky Star Moon and

---

[6]   Idaho Supreme Court's Repository lists a case in Ada County entitled *HSBC Bank USA Nation Association v. Sterling J. Mortensen, et al.*, Case CV-OC-2009-23591.   The Repository is available online at https://www.idcourts.us/repository/start.do.   The Court may take judicial notice of these public records.   *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of state court decision and related filed briefs for purposes of determining prior judgment's preclusive effect); *Lee v. City of Los Angeles*, 250 F.3d 668, 888-89 (9th Cir. 2001) (explaining that court may take judicial notice of matters of public record); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (providing that court may take judicial notice of documents whose authenticity is not at issue).

[7]   After judgment, Plaintiff filed two motions for stay, a motion for temporary restraining order, motion for hearing, and motion for findings of fact and conclusions of law.   *See HSBC Bank USA Nation Ass'n v. Sterling J. Mortensen, et al.*, Case CV-OC-2009-23591 (Ada County).

Universe Trust (the "Trust").  *See* Dkt. 34-1, Ex. B; Compl. At ¶¶ 3.56, 3.104.  Steve Fritts recorded that purported "Trustee's Deed" on November 27, 2009, three weeks after the Deed of Trust in favor of HSBC was recorded following the foreclosure sale.  First O'Neill Aff., Ex. E (Dkt. 31).  In August of 2010, Fritts and Burton, in their capacity as representatives of the Trust, deeded the Property back to Burton and Fritts in their individual capacities, apparently to avoid an issue with appearing *pro se* in this case on behalf of the Trust.  *See* Mot. & Mem. to Allow Pls.' to Submit Lit. Plan, p. 2 (Dkt. 34).

Plaintiff's most recent Complaint (Dkt. 106) raises the following claims (as identified by Plaintiff) against the remaining Defendants, ASC, Northwest, MERS, and Silver State:[8] (1) breach of fiduciary duties by Silver State, ASC, and Northwest; (2) violations of the federal Truth in Lending Act; (3) violations of the Idaho Trust Deeds Act; (4) violations of the Real Estate Settlement Procedures Act; (5) violation of the consumer protection act[9]; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress.  Plaintiff seeks declaratory judgment on these issues in his favor and requests that the Defendants be required to return any "unlawfully received" payments and be ordered to void the sale of Plaintiff's Property and return it to him.  Comp., p. 58 (Dkt. 106).

ASC, Northwest, and MERS have responded to the Complaint with a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. 111).

---

[8]  Although he also asserted claims against Nomura, Nomura took no action related to the foreclosure or other events in this case because HSBC operated as the trustee for Nomura at all times.  *See also supra*, p.1 n.1.

[9]  Plaintiff's Complaint, in the Jurisdiction section, refers to both "State and Federal Consumer Protection Acts", but he cites only to an Idaho case in support; hence, the Court will view this as a claim under the Idaho Consumer Protection Act.  *See* Dkt. 106, ¶ 2.0 & p. 47.

# REPORT

### A.      Legal Standard for Motions to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie the decision in Twombly. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *See id.*  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.  Second,

REPORT AND RECOMMENDATION - 6

only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.* at 679.
"Determining whether a complaint states a plausible claim for relief will . . . be a
context-specific task that requires the reviewing court to draw on its judicial experience and
common sense."  *Id.*

Providing too much in the complaint may also be fatal to a plaintiff.  Dismissal may be
appropriate when the plaintiff has included sufficient allegations disclosing some absolute
defense or bar to recovery.  *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir.
1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as
good as if depositions and other . . . evidence on summary judgment establishes the identical
facts.").

A dismissal without leave to amend is improper unless it is beyond doubt that the
complaint "could not be saved by any amendment."  *Harris v. Amgen, Inc.*, 573 F.3d 728, 737
(9th Cir. 2009) (issued two months after Iqbal).  The Ninth Circuit has held that "in dismissals
for failure to state a claim, a district court should grant leave to amend even if no request to
amend the pleading was made, unless it determines that the pleading could not possibly be cured
by the allegation of other facts."  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection
Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  The issue is not whether the plaintiff will prevail
but whether he "is entitled to offer evidence to support the claims."  *Diaz v. Int'l Longshore and
Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2008) (citations omitted).

The Court's review of the motion to dismiss is undertaken with an eye on Ninth Circuit
standards regarding pro se litigants.  *Tucker v. Carlson*, 925 F.2d 330 (9th Cir. 1991).  However,
the Court reminds the Plaintiff that pro se litigants are held to same procedural rules as counseled
litigants.  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).  "Persons appearing without

REPORT AND RECOMMENDATION - 7

attorneys are required to become familiar with and comply with all Local Rules of this District, as well as the Federal Rules of Civil and /or Criminal Procedure.  In exceptional circumstances, the Court may modify these provisions to serve the ends of justice."  D. Idaho Loc. Civ. R. 83.7.

**B.    The Preclusion Doctrines**

   *1.    The State Court Proceedings*

On April 30, 2010, Judge Neville, having granted a motion for judgment on the pleadings in the state court case, entered judgment in favor of HSBC  and the other plaintiffs in that case and against Plaintiff and the other occupants of the house "for restitution of" the Property. O'Neill Aff., Ex. E.  This judgment upheld the foreclosure sale Trustee's Deed recorded on November 3, 2009 that conveyed the Property to HSBC, as trustee for Nomura.  First O'Neill Aff., ¶ 7 & Ex. F (Dkt. 31).  Plaintiff filed the instant lawsuit on May 7, 2010, *a week after Judge Neville entered final judgment* in the state court case.

Plaintiff did not appeal the state court judgment.  He did file a motion to set aside that judgment on July 28, 2011—a year and three months after judgment was entered.  In that motion he raised some of the same arguments raised here: lack of standing, the need for Defendants to produce "wet ink", and that MERS lacks a beneficial interest.  O'Neill Aff., Ex. G, pp. 2-3. Judge Neville denied Plaintiff's motion to set aside.

   *2.    Res Judicata*

State court judgements are afforded full faith and credit in federal court proceedings, such that res judicata and other preclusion doctrines may limit or exclude particular causes of action in federal court.  28 U.S.C. § 1738.  "[A] federal court sitting in diversity must apply the res judicata law of the state in which it sits."  *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982).   Under Idaho law, "[r]es judicata is comprised of claim preclusion (true

res judicata) and issue preclusion (collateral estoppel)." *Navarro v. Yonkers*, 173 P.3d 1141,

1144 (Idaho 2007) (quoting *Hindmarsh v. Mock*, 57 P.3d 803, 805 (2002)).

Claim preclusion means that "a valid final judgment rendered on the merits by a court of

competent jurisdiction is an absolute bar to a subsequent action between the same parties upon

the same claim." *Lohman v. Flynn*, 78 P.3d 379, 386 (Idaho 2003) (citations omitted); *see also*

*Coeur d'Alene Tribe v. Asarco Inc*., 280 F.Supp.2d 1094, 1117–19 (D.Idaho 2003) ("Although

the literal definition of the term res judicata is expansive enough to cover both preclusion of

relitigation of the same cause of action and relitigation of the same issue, the modern tendency is

to refer to the aspect of the doctrine that precludes relitigation of the same issue in a separate

cause of action as collateral estoppel, and to refer to that aspect preventing relitigation of the

same cause of action as res judicata.") (quotations and citations omitted)).

"Res judicata thus applies to protect litigants from the burden of litigating the same cause

of action with the same party or its privity." *Coeur d'Alene Tribe*, 280 F.Supp.2d 1094, 1117–19

(D.Idaho 2003) (citing *Hindmarsh v. Mock*, 138 Idaho 92, 57 P.3d 803 (Idaho 2002)).  Res

judicata "bars not only subsequent relitigation of a claim previously asserted, but also

subsequent relitigation of any claims relating to the same cause of action which were actually

made or which might have been made.  *Lohman*, 78 P.3d at 386 (*citing Hindmarsh*, 57 P.3d at

805 (citations omitted)).

The doctrine of res judicata applies where these conditions are met: (1) the same claim or

cause of action arising out of the same facts must be involved in both suits; (2) there must be a

final judgment on the merits in the prior action; and (3) the parties in the instant action must be

the same as or in privity with the parties in the prior action in question.  *Coeur d'Alene Tribe*,

280 F.Supp.2d 1094.  "The purposes of these judicially created rules are to conserve judicial

REPORT AND RECOMMENDATION - 9

resources, protect litigants from multiple lawsuits, and foster certainty and reliance in legal

relations." *Id.* The result of res judicata, as described by the Idaho Supreme Court, is that "[a]

valid and final judgment rendered in an action extinguishes all claims arising out of the same

transaction or series of transactions out of which the cause of action arose." *Diamond v.*

*Farmers Group, Inc.*, 119 Idaho 146, 804 P.2d 319, 323 (Idaho 1990); *see also Lohman*, 78 P.3d

at 386.

In the instant case, however, because the stipulation to dismiss the appeal filed in the

state court matter did not specify that it was "with prejudice," whether there was a valid final

judgment entered is not clear and it leaves open the possibility that the dismissal of the appeal

may not have preclusive effect.

> (i)   *Plaintiff's state and federal lawsuits arise from the same facts and all*
>       *claims could have been made in the state court case.*

"Claim preclusion bars a subsequent action between the same parties upon the same

claim or upon claims relating to the same cause of action . . . *which might have been made*."

*Ticor Title Co. v. Stanion*, 157 P.3d 613, 617 (2007) (quoting *Hindmark v. Mock*, 138 Idaho 92,

64, 57 P.3d 803, 805 (2002) (emphasis added and internal quotation marks omitted). A final

judgment "extinguishes all claims arising out of the same transaction or series of transactions out

of which the first cause of action arose." *Id.* The "'transactional concept of a claim is broad'

and that claim preclusion 'may apply even where there is not a substantial overlap between the

theories advanced in support of the claim, or the evidence relating to those theories.'" *Id.*

Plaintiff attempted in the state case to bring claims similar to those brought in this federal

case, even though his attempt was too late to defend against HSBC's claims in that action. *See*

O'Neill Aff., Ex. G, pp. 2-3 (Dkt. 111-2) (Plaintiff's motion to set aside judgment, raising

**REPORT AND RECOMMENDATION - 10**

several arguments, including lack of standing, the need for Defendants to produce "wet ink", and that MERS lacks a beneficial interest.).  *See also* O'Neill Aff., Ex. D, ¶ 3.2 (Plaintiff's motion to amend judgment, which asserts claims against HSBC, Nomura, and "other entities" associated with the Deed of Trust).

Other federal courts also have ruled that defendants may defend against state unlawful detainer, foreclosure, or eviction cases, with a variety of claims, including the Truth in Lending Act ("TILA"), and that the failure to do so may preclude a later federal action based on these claims.  *See Albano v. Norwest Fin'l Hawaii, Inc.* 244 F.3d 1061, 1064 (9th Cir. 2001) (applying Hawai'i res judicata principles and finding "[t]here can be no doubt whatsoever that the . . . TILA claim could have been litigated" as a defense in the state court foreclosure action and that "[i]t was a defense that would have ineluctably precluded foreclosure" if the TILA claims were meritorious); *Ann v. Tindle*, No. 07-16744, 321 Fed. Appx. 619, 620 (9th Cir. Apr. 3, 2009) (affirming denial of leave to amend where district court found under California law that an earlier unlawful detainer action was res judicata to a plaintiff's action for breach of contract and civil rights violations).

Similarly, the Idaho Supreme Court has indicated that a TILA violation claim may be appropriately raised as a defense in cases seeking possession of real property.  *See PHH Mortg. Services Corp. v. Perreira*, 200 P.3d 1180, 1190 (Idaho 2009) (remanding to the district court to consider on summary judgment a TILA counterclaim filed in an action by a lender to obtain possession of property).  Additionally, the Idaho Supreme Court has applied *res judicata* in subsequent suits seeking resolution of property interests adjudicated in a prior lawsuit.  *See, e.g., City of Caldwell v. Roark*, 575 P.2d 495, 496 (Idaho 1978) (res judicata barred claims in an

**REPORT AND RECOMMENDATION - 11**

action brought against the City of Caldwell to establish plaintiffs' interest in land that had been the subject of condemnation proceedings instituted by the city).

Accordingly, it is recommended that the District Court find Plaintiff could have raised the claims raised in this federal lawsuit as defenses or counterclaims in the state court case.

> *(ii)*     *The state court issued a final judgment on the merits prior to Plaintiff filing the federal lawsuit.*

Judge Neville entered judgment in the state court case on April 30, 2010. Plaintiff filed a variety of post-judgment motions, but did not appeal the judgment. He filed the instant case on May 7, 2010, a week after the state court entered judgment. Thus, the state issued a final judgment on the merits before Plaintiff filed the instant case.

> *(iii) the parties in the instant action are in privity with the state court case parties*

"Privity is defined as a mutual or successive relationship to the same property rights, or such an identification in interest of one person with another as to represent the same legal rights." *Sun Valley Land & Minerals, Inc. v. Burt*, 853 P.2d 607, 614 (Idaho Ct. App. 1993). Under this standard, MERS and Silver State (as the original lender) are in privity with each other. MERS acted as the nominal beneficiary for the lender under the deed of trust and as the agent for Silver State and the its successors and assigns. MERS then transferred its beneficial interest to HSBC, who initiated the state court action. Additionally, MERS, as the Deed of Trust beneficiary and the lender's nominee, appointed Northwest as successor trustee

Although Idaho has not yet decided the issue, courts in other jurisdictions have ruled that MERS stands in privity with entities that subsequently acquire a promissory note or deed of trust. *See Middlebrook v. Mortg. Elec. Registration Sys., Inc*., 2011 WL 6934233, *4 (E.D.Mich. Dec.30, 2011) (finding MERS in privity with bank to which MERS had assigned mortgage);

**REPORT AND RECOMMENDATION - 12**

*Butts v. JP Morgan Chase Bank*, 2011 WL 7109344, *2 (N.D.Tex. Dec.28, 2011) (finding

MERS in privity with Chase Home Finance because MERS was previously the beneficiary under

the deed of trust and had assigned the same to Chase Home Finance); *Radford v. U.S. Bank Nat'l*

*Ass'n*, 2011W L 4054863, * 9 (D. Hawai'I Sept. 9, 2011) (finding MERS in privity with bank

which was party to prior foreclosure action where MERS had served as nominee to bank's

predecessor in interest).

      Accordingly, it is recommended that the District Court hold that the Defendants in this

case are in privity with HSBC and that the District Court dismiss Plaintiff's Complaint on a *res*

*judicata* (claim preclusion) basis.

## C.     Plaintiff's Status as the Real Party in Interest

      Defendants argue that Plaintiff is not the "real party in interest" in this case because he

"divested himself of ownership of the property at issue on October 12, 2009 when he executed a

quit claim deed to Brenda Burton and Steve Fritts, who thereafter recorded a warranty deed to

the Sky Star Moon and Universe Trust."  Defs.' Mem.; *see also* O'Neill Aff., Exs. B & C.

Additionally, as Defendants note, the attempt by Sky Star Moon and Universe Trust to convey

the Property back to Plaintiff occurred *after* the Trustee's sale, a sale that terminated the interest

of Plaintiff and all those whose interest arose through him.  The trustee's sale was held on

October 23, 2009.  *See* O'Neill Aff., Ex. D.  The validity of that sale was confirmed by Judge

Neville in his state court judgment, and in the order denying Plaintiff's motion to set aside the

judgment.  In the latter order, Judge Neville ordered Plaintiff to "take no further action nor make

any filing in this case or in the Ada County Recorder's Office which interferes in any way with

the rights of Plaintiff [HSBC] or its successors in the Property . . . ."  O'Neill Aff., Ex. G, (Dkt.

111-2).  These orders evidence that Plaintiff has no present interest in the Property.  Even so, the

REPORT AND RECOMMENDATION - 13

fact that Plaintiff has no present ownership interest in the Property does not mean that he could

not recover monetary damages related to his other claims, such as those based on failures make

certain required disclosures, if he otherwise is allowed to proceed upon such claims.

Hence, it is recommended that the District Court not dismiss Plaintiff's claims based on

the "real party in interest" challenge.  The purpose of Rule 17(a) "is simply to protect the

defendant against a subsequent action by the party actually entitled to recover, and to insure

generally that the judgment will have its proper effect as res judicata."  Fed. R. Civ. P. 17(a),

Adv. Comm.'s Note.  *See also* Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for

failure to prosecute in the name of the real party in interest until, after an objection, a reasonable

time has been allowed for the real party in interest to ratify, join, or be substituted into the

action.").

### D.        Plaintiff has Failed to State a Claim for Breach of Fiduciary Duty

Plaintiff's first and second claims allege a breach of fiduciary duty against Silver State

(the original lender), Nomura (the apparent owner of the loan who was represented by its trustee

HSBC during the actions related to the foreclosure), ASC (the entity who held the servicing

rights for the loan after Silver State then GMAC), and Northwest, the successor trustee.  Such

claims cannot go forward because Defendants have no fiduciary relationship with Plaintiff.

"In order to establish a claim for breach of fiduciary duty, a plaintiff must establish that

defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached."  *Bushi v.*

*Sage Health Care, PLLC*, 203 P.3d 694, 699 (2009) (citation and marks omitted); *see also Giles*

*v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880–881 (9th Cir. 2007) (applying Nevada

law).  Plaintiff alleges that Silver State, as Plaintiff's mortgage holder and an entity in a position

of trust and confidence, created "fiduciary or quasi-fiduciary duties" owed to Plaintiff.  Compl.,

p. 23 (Dkt. 106).  He also alleges, without any explanatory detail, that Northwest as the trustee

had a fiduciary duty to ensure that "the Deed of Trust does not get split from the Note." *Id.* at p.

29.  He provides no explanation whatsoever as to how ASC came to owe him a duty.

Regardless, other than in the commonly understood fiduciary settings, an implied

fiduciary relationship is seldom recognized under Idaho law.  *Davis v. Keybank Nat'l Assoc.*,

2005 WL 2847239, *2 (D.Idaho October 26, 2005).  "The facts and circumstances must indicate

that the one reposing the trust has foundation for his belief that the one giving advice or

presenting arguments is acting not in his own behalf, but in the interests of the other party." *Id.*

(citing *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 853 (1991) (quotation

omitted)).  There is no such evidence in this record, as will be discussed as to each Defendant to

follow.

  1. *Northwest*

Under Idaho law, the duties of a trustee on a deed of trust are those specified in the Idaho

Trust Deeds Act or in the deed of trust document itself.  *Sykes v. Mortgage Elec. Reg. Sys., Inc.*,

No. 1:11–cv–377–BLW, 2012 WL 914922, *4-5  (D.Idaho Mar. 15, 2012) (discussing *Davis v.

Keybank Nat'l Assoc.*, 2005 WL 2847239, ——2–3 & n. 5 (D.Idaho Oct. 26, 2005) (construing

trustee's duty under the Deeds Trust Act, and noting that Idaho courts had not determined duty

to be fiduciary in nature), and *Diamond v. Sandpoint Title Ins., Inc.*, 968 P.2d 240, 246 (Idaho

1998) (noting that Idaho courts have not recognized that the duties of a trustee under a deed of

trust are fiduciary in nature)).  "There is no duty under the Idaho Trust Deeds Act or the Deed of

Trust for the trustee to stop a foreclosure upon request of a borrower who is attempting to obtain

a loan modification, or to ensure that a note is not 'split' from the deed of trust." *Sykes*, 2012

WL 914922, *5 (explaining that "[a]ny duty to preserve the validity of a right to payment, or a

REPORT AND RECOMMENDATION - 15

right to foreclose—the rights preserved by the legal instruments Plaintiff now claims are

void—would run if at all to the beneficiary of these instruments"). As in the *Sykes* case, the

Plaintiff here "has failed to plead facts supporting such a rare circumstance that a trustee under a

deed of trust—current or successor—would owe a fiduciary duty to the grantor." *Sykes*, 2012

WL 914922, at *5 ("Plaintiff fails to allege any facts supporting a foundation to believe that

Pioneer or NWTS was acting in his interest, and not on its own behalf or that of the beneficiary

to the Deed of Trust, in any action it took as the trustee."). *See also Gaitan v. Mortgage Elec.*

*Reg. Sys., Inc.*, 2009 WL 3244729, at *12 (C.D. Cal. 2009) (explaining that "a trustee in a

nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for

the trustor and beneficiary") (citation and internal quotation marks omitted).

   2. *Silver State, Nomura, and ACS*

   "Idaho law establishes that no fiduciary duty ordinarily arises between parties to an arm's

length business transaction." *Wade Baker & Sons Farms v. Corp. of Presiding Bishop of Church*

*of Jesus Christ of Latter–Day Saints*, 42 P.3d 715, 721 (Idaho Ct. App. 2002) (citing *Mitchell v.*

*Barendregt*, 820 P.2d 707, 714 (Idaho Ct. App.1991)).[10]  Additionally, mortgage lenders do not

generally owe borrowers any fiduciary duties. *Black Canyon Racquetball Club, Inc. v. Idaho*

*First Nat'l Bank, N.A.*, 804 P.2d 900, 905 (Idaho 1991) (explaining that "the relationship in a

lender-borrower situation is a debtor-creditor relationship, and not a fiduciary relationship," and

---

   [10]  *See, e.g.*, *Household Group LLLP v. Fuss*, 2007 WL 1650933 (N.D. Cal. 2007)
(explaining that "[a] commercial contract creates a fiduciary relationship only when one party
agrees to serve in a fiduciary capacity" and citing *Morgan v. Am. Fid. Fire Ins.* Co., 210 F.2d 53,
54-56 (8th Cir. 1954) (finding fiduciary relationship in holding premiums where insurance agent
agreed to act as trustee)); *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 882 (9th Cir.
2007) (court did not recognize a fiduciary relationship between lender and borrower as a matter
of law).

dismissing plaintiff's claim for breach of fiduciary duty against lending bank); *Peterson v. Idaho First Nat'l Bank*, 367 P.2d 284, 291 (Idaho 1961) (depositor-customer situation is considered a debtor-creditor relationship).  In short, no fiduciary relationship generally exists in the context of a debtor-creditor relationship, including that of a lender-borrower.  *See Idaho First Nat. Bank v. Bliss Valley Foods, Inc*., 824 P.2d 841, 852 (Idaho 1991).  Plaintiff failed to allege any facts supporting more than a lender-borrower relationship between Plaintiff and the original lender, Silver State, or any successive owner of the loan.

District courts in the Ninth Circuit considering cases analogous to this one have held that the same holds true for the entity servicing mortgage loans.  *See, e.g.*, *Castaneda v. Saxon Mortgage Servs.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009) (holding lender, nominal beneficiary under the deed, and loan servicer owed mortgagor no duty); *Shepherd v. Am. Home Mortgage Serv., Inc.,* 2009 WL 4505925, at *2 (E.D. Cal. 2009) (a loan servicer does not owe a fiduciary duty to a borrower); *Marks v. Ocwen Loan Servicing,* 2009 WL 975792, at *7 (N.D. Cal. 2009).

In sum, Plaintiff's fiduciary duty theories are not recognized under Idaho law and it is recommended that his claims for breach of fiduciary duty (counts one and two) against all Defendants[11], be dismissed.

## E.    Truth in Lending Act

Plaintiff's third cause of action alleges violations of the Truth In Lending Act ("TILA").  TILA requires a "creditor" to make certain disclosures to a borrower in a consumer credit

---

[11]  Plaintiff's fiduciary duty claims mention MERS in the text, but do not name MERS as a party against whom he is assert these claims.  To the extent he is attempting to assert a claim against MERS, MERS acted on behalf of the lender or its assignees, and the same principles apply to preclude any claims against MERS.

transaction where the lender received a security interest in the borrower's residence.  *See* 15 U.S.C. § 1631–1635.  However, even if adequately alleged, any potential TILA claim in this case is time barred.

The statute of limitations for TILA is "one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e); *Shaw v. Lehman Bros. Bank, FSB*, No. CV-08-406-S-BLW, 2009 WL 790166, at *4 (D.Idaho Mar. 20, 2009); *see also Monaco v. Bear Stearns Resid. Mortg. Corp.*, 554 F. Supp. 2d 1034, 1039 (C.D. Cal. 2008)  Additionally, the statute begins to run when the plaintiff enters into the loan agreement.  *King v. Cal.*, 784 F.2d 910, 915 (9th Cir. 1986); *Shaw*, 2009 WL 790166, at *4.  Plaintiff's claim under TILA is time-barred because he failed to file suit within one year of the consummation of the loan transaction.  Plaintiff obtained his refinance loan on or about August 10, 2006, Compl. ¶ 3.1, but the initial complaint was not filed until May 7, 2010, three years too late.

Plaintiff alleges that the TILA violations "are defensive in nature to enjoin foreclosure" and therefore no statute of limitations "exists", Compl. ¶ 6.3; however, he provides no authority for this assertion and the Court is aware of none.  Moreover, Plaintiff's Complaint lacks any allegations from which the Court could infer that Plaintiff might be entitled to equitable tolling. *See Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (concluding that plaintiff was not entitled to tolling where "nothing prevented [her] from comparing the loan contract, [defendant's] initial disclosures, and TILA's statutory and regulatory requirements") (citation omitted).

Regardless, Plaintiff's allegations are insufficient to support a violation of TILA.  *See, e.g.*, *Marks v. Chicoine*, 2007 WL 160992, at *7 (N.D.Cal. Jan.18, 2007) (dismissing TILA claims for failure to allege how defendants violated the statute); *Tasaranta v. Homecomings Fin.*

REPORT AND RECOMMENDATION - 18

*LLC*, 2009 WL 3055227, at *3 (S.D.Cal. 2009) (same).  Plaintiff alleges he is entitled to

damages and rescission under TILA because he "did not receive documents and disclosures,"

Compl. ¶ 6.2, but he has not plead any facts describing what "documents and disclosures" he

believes he should have received and how he relied on the inadequate disclosures.  Indeed, his

allegations are inherently speculative because he asserts that purported disclosure violations *will*

*be* "revealed through a review of documents to be obtained through discovery." *Id.*[12]  Although

not all required disclosures coincide with the original loan transaction, *see, .e.g.*, *Gale v. First*

*Franklin Loan Servs.*, ___ F.3d. ___, No. 09–16498, 2012 WL 2855811, *2-4 (9th Cir. July 12,

2012) (discussing 15 U.S.C. § 1641(f)(2)), the footnotes in the Complaint discussing Plaintiff's

TILA claim refer to the appraisal and initial loan paperwork as the grounds for Plaintiff's claim,

*see* Compl., pp. 36-38.  Plaintiff must allege more than a sheer possibility that a defendant has

acted unlawfully to survive a motion to dismiss.  *See Twombly*, 550 U.S. at 556.

---

[12]  Plaintiff's Complaint alleges fraud and makes general complaints about a loan origination fee or "finder's fee", but these are contained in footnotes and do not tie any particular actions to any defendants except to discuss the "common practice" of lenders such as Silver State and to allege that Silver State coerced appraisers to give a higher appraisal than the fair market price.  Compl., pp.36-37, nn. 81 & 82.  Again though, there is no mention of what required disclosures the defendants failed to provide.

REPORT AND RECOMMENDATION - 19

Finally, Plaintiff requests "the return of [his] residence." Compl. ¶ 6.4.[13]  Courts have

used their discretion to "impose conditions on rescission that assure that the borrower meets her

obligations once the creditor has performed its obligations," *Yamamoto v. Bank of N.Y.*, 329 F.3d

1167, 1172 (9th Cir. 2003), often requiring plaintiffs to plead the ability to tender payment to go

forward with TILA claims.  *See, e.g., LAL*, 680 F. Supp. 2d at 1222; *Manuel v. Discovery Home*

*Loans, LLC*, 2010 WL 2889510 (N.D. Cal. July 22, 2010).  Plaintiff has not alleged tender and

"a claim for rescission requires plaintiffs to allege they can or will tender the borrowed funds

back to the lender."  *Yamamoto*, 329 F.3d at 1171 ("Rescission should be conditioned on

repayment of the amounts advanced by the lender"); *Garza v. Am. Home Mortgage*., 2009 WL

188604, at *5 (E.D. Cal. 2009) (dismissing TILA claim in light of failure to allege tender since

"[r]escission is an empty remedy without [plaintiff's] ability to pay back what she has

received").

For all of these reasons, it is recommended that the District Court rule that Plaintiff has

failed to state a claim for relief under TILA.

---

[13] The right to rescission under TILA does not appear to apply to a residential mortgage transaction, as defined by section 1602(w), and the Court finds this applies to a refinancing transaction that is secured by an interest in the same property.  15 U.S.C. § 1635(e)(1) and (2). Section 1602(w) provides that "the term 'residential mortgage transaction' means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  15 U.S.C. § 1602(w).  *See, e.g.*, *In re Beach*, 447 B.R. 313, 323 (Bankr. D. Idaho 2011) ("There is no right of rescission associated with [a residential mortgage] transaction."); *Shaw*, 2009 WL 790166, at *4; *Turczynksi v. Friedman*, 2007 WL 4556923, at *4 (E.D. Cal. 2007) (plaintiff failed to state a claim under TILA because the challenged residential mortgage transaction was expressly exempt from the right of rescission).

**REPORT AND RECOMMENDATION - 20**

**F.**     **Idaho Trust Deeds Act**

Plaintiff's fourth cause of action alleges violations of the Idaho Trust Deeds Act, Idaho Code §§ 45–1501 *et seq*.  Compl., pp. 37-38.  Plaintiff alleges that none of the Defendants had standing to collect payments on the Note or to foreclose on the Property.  *See Compl*. ¶ 7.4 (alleging that Defendants failed to demonstrate standing by producing the "wet ink" original note and all assignments); *see also id.* ¶ 7.5.

Plaintiff does not dispute the default on his loan; rather he contends that the assignments, appointment of a successor trustee, and the notices of default are invalid due to the "unlawful splitting of [Plaintiff's] wet ink note and deed of trust, and removal from the State of Idaho." Plaintiff's "show me the Note" theory has been rejected by the Supreme Court of Idaho as a tactic to avoid an otherwise legal non-judicial foreclosure and also rejected by courts in the District of Idaho.  *See Idaho v. Trotter v. Bank of N.Y. Mellon, et al.*, 275 P.3d 837 (2012).  In *Trotter*, the court explained that "a trustee may initiate non-judicial foreclosure proceedings on a deed of trust without first proving ownership of the underlying note . . . ."  *Trotter*, 275 P.3d at 862.  Thus, to the extent Plaintiff's claims are generally premised on the argument that the Trustee must produce the original "wet-ink" Note and Deed of Trust to undertake a non-judicial foreclosure on the Property, his claim fails.

Additionally, to the extent Plaintiff argues that "splitting" the Note from the Deed of Trust renders the non-judicial foreclosure void, numerous decisions in analogous cases from other district courts in the Ninth Circuit hold that the securitization of the loan dies not extinguish the security interest in the real property.  *See, e.g.*, *West v. Bank of America*, Case No. CV10-1966-JCM, 2011 WL 2491295 at *2 (D. Nev. June 22, 2011); *Beyer v. Bank of America*, 800 F.Supp.2d 1157, 1159 (D. Or. 2011) (rejecting an argument that a trust deed is void when

separated from a promissory note); *Hafiz v. Greenpoint Mortg. Funding, Inc*., 652 F.Supp.2d 1039 (N.D.Cal. 2009) (rejecting plaintiff's theory that defendants "lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool"); *Chavez v. California Reconveyance Co.*, Case No. 2:10–cv–00325–RLH–LRL, 2010 WL 2545006 at *2 (D. Nev. June 18, 2010) ("The alleged securitization of Plaintiffs' Loan did not invalidate the Deed of Trust, create a requirement of judicial foreclosure, or prevent Defendants from being holders in due course.").

Plaintiff also alleges that MERS lacks standing to foreclose on the subject property because it cannot prove that it is a beneficiary of the Deed of Trust under the Idaho Trust Deeds Act.  Compl. ¶ 7.2.  Plaintiff relies on a state district court decision to support his argument that MERS is a false beneficiary, *Ralph v. MetLife*, CV2010-0200 (Minidoka County Aug. 10, 2010).[14]  The state district court ruling is not binding precedent in this Court, however, and this Court is not persuaded to adopt the same rationale as in the *Ralph* case, particularly considering the more recent ruling by the Idaho Supreme Court in *Trotter* and recent federal cases discussing the issue.  *See infra*.

Significantly, the Deed of Trust specifies that MERS "is acting solely as a nominee for Lender and Lender's successors and assigns" and case law confirms this role of MERS as the lender's nominee, or agent.  O'Neill Aff., Ex. A.  Thus, as for MERS's status and standing, the language of the Deed of Trust allows for MERS to act as the agent of the Lender, or its assigns, in administering the deed of trust, and evidences that it holds "legal title," and therefore has the

---

[14]  Plaintiff raises this MERS false beneficiary in his Objection to the motion to dismiss in his breach of duty argument.  *See* Objection, p. 7 (Dkt. 117).  For the same reasons the Court rejects this argument related to the Idaho Trust Deeds Act Claims, the Court finds the argument is not sufficient to state a claim for breach of fiduciary duty.

authority to do so.  *See Cervantes v. Countrywide Home Loans*, 656 F.3d 1034, 1044 (9th Cir.

2011); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1044 (D. Ariz. 2011)

(finding that under Arizona law that a split would only render a mortgage unenforceable if

MERS or the trustee, as nominal holders of the deed, are not agents of the lenders and stating

"even if we were to accept the plaintiffs' premise that MERS is a sham beneficiary and the note

is split from the deed, we would reject the plaintiffs' conclusion that, as a necessary

consequence, no party has the power to foreclose").[15]

Further, the allegation that MERS is not registered to do business in Idaho does not state

a claim for violation of the Idaho Trust Deeds Act.  *See* Compl. ¶ 7.2 (alleging MERS "was not

registered with the State of Idaho, and therefore was prohibited from engaging in any business

practices regarding [Plaintiff's] Note and Title"); *Sykes*, 2012 WL 914922 at *6-7.  *See also, e.g.*,

*Bogdan v. Countrywide Home Loans*, 2010 WL 1241540, at *8 (E.D. Cal. 2010) (finding MERS

was not required to register with the state to foreclose property therein); *Benham v. Aurora Loan*

*Servs.*, 2009 WL 2880232 *4 (N.D. Cal. 2009) (same).

---

[15]  *See also Carter v. IBM Lender Business Process Servs. Inc., et al.*, Bonneville County
District Court, Case No. CV-2011-647 (Jan. 11, 2012) (finding the lender and its successors and
assigns are designated entities for whose benefit the deed of trust was given); *Gomez v.
Countrywide Bank, FSB*, 2009 WL 3617650, at *2 (D. Nev. 2009) (analyzing language in deed
of trust and finding it clearly intended MERS to act as agent for the lender in administering the
deed of trust); *Washburn v. Bank of America*, 2011 WL 7053617, *4-5 (D. Idaho 2011) (citing
*Beyer v. Bank of America*, 800 F. Supp. 2d 1157 (D. Or. 2011) (rejecting argument that trust
deed is void when separated from promissory note); *Hafiz v. Greenpoint Mortg. Funding, Inc.*,
652 F. Supp. 2d 1039 (N.D. Cal. 2009) (rejecting plaintiff's theory that defendants "lost their
power of sale pursuant to the deed of trust when the original promissory note was assigned to a
trust pool"); *Fowler v. ReconTrust Company, N.A.*, 2011 WL 839863 (D. Utah March 10, 2011)
(in interpreting deed of trust language, finding that MERS is able to take any actions that the
Lender could).

REPORT AND RECOMMENDATION - 23

Finally, Plaintiff's Complaint, and the attachments to his various complaints, show that all necessary assignments, appointments, and notices were duly recorded and/or served as required under the Trust Deeds Act in order to effect a non-judicial foreclosure. *See* Compl., ¶¶ 3.27& 3.28; Dkt. 73-3, Exs. U & V. Where, as here, a trustee complies with Idaho Code Sections 45-1505 and 45-1506, property may be foreclosed upon in Idaho. *Trotter*, 275 P.3d at, 863 (Idaho 2012).

For all of these reasons, it is recommended that the District Court find Plaintiff's Fourth Cause of Action fails to state a claim for which relief may be granted.

## G.  Real Estate Settlement Procedures Act ("RESPA")

Plaintiff's fifth cause of action alleges violations of RESPA. Compl., pp.42-45. In pertinent part (to the extent it provides a private cause of action) RESPA requires "loan servicers" to respond to certain types of borrower inquiries regarding the servicing of a loan, including a "qualified written request," (known as a "QWR"), within 60 days. 12 U.S.C. § 2605(e). RESPA defines a QWR as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-
> (I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). "Not all requests that relate to the loan are related to the *servicing* of the loan." *Williams v. Wells Fargo, N.A.*, No. C 10–00399, 2010 WL 1463521, at *3 (N.D.Cal. April 13, 2010) (citations omitted; emphasis added). A loan servicer only has a duty to respond

if the information request is related to loan servicing.  *See, e.g., id.*; *Champlaie v. BAC Home*

*Loans Servicing, LP*, 706 F.Supp.2d 1029, 1043 (E.D.Cal. 2009).

Plaintiff's claim that Defendants violated RESPA appears to be based on his allegations

that Defendants failed to provide Plaintiff with requested information, such as who holds the

Note and Deed and their location.  Compl., ¶¶ 8.2-8.4.  Plaintiff's Objection (Dkt. 117) does not

shed much additional light on the specifics of his RESPA claim.  In his Objection, Plaintiff

asserts that the "RESPA violations committed by Defendants and their agent during Trustee sale

ripened when he did not postpone the Trustee Sale afer receiving the initial notice of a

Complaint with Lis Pendens filed on the property, as well as being informed that the Appellant

was still in the Modification Process."  Objection, p. 18.  This is not a QWR because it does not

request information within the scope of RESPA (that is, the reasons the borrower thinks the

account is in error *or* sufficient detail regarding other information sought).  Thus, the Defendants

were not required to respond, although they did respond to the requests in several instances.  *See,*

*e.g.*, Compl. ¶¶ 3.23, 3.24, Exs. Q & R (Dkt. 106).[16]  Moreover, the majority of Plaintiff's[17]

---

[16]   The exhibits upon which Plaintiff relies to support his claims are comprised mostly of letters *from* Defendants providing information about Plaintiff's loan, the servicing of his loan, how to proceed to obtain a loan modification or start a short sale/pre-foreclosure sale process. They are not copies of any QWRs by Plaintiff.  *See* Dkt. 73, Exs. C-H, J-T, X-GG & LL (this version of the complaint is used because it contains all the exhibits, whereas the version of the complaint filed at Docket 106 does not have all of the attachments included).  The few documents submitted *to* Defendants, which Plaintiff includes as exhibits to support his claims, do not qualify as QWRs.  For instance, Ex. I is an authorization allowing Plaintiff's wife and a real estate agent to communicate with the loan servicer about the loan.  Exhibit II is a facsimile from Steve Fritts (as Trustee for Sky Star Moon and Universe Trust) to "CEASE AND DESIST TRUSTEE SALE" related to the "Supposed Original Loan" on the Property (referred to in the notice as "Fictional: Commonly Known Address".  This was not a communication *from* Plaintiff to any Defendant and, more significantly, it is not a qualified QWR under RESPA.

[17]   Plaintiff's Complaint refers to "plaintiffs" in the plural form, so it is not clear who actually was involved in the telephone communications with Defendants.  Indeed, when Plaintiff

requests for information from Defendants were made orally, not in writing, and therefore do not qualify as QWRs.  *See, e.g.*, Compl., ¶¶ 3.7, 3.11, 3.41, 3.42, 3.44, 3.45, 3.47, 3.48, 3.50, 3.53(Dkt. 106).

Plaintiff's RESPA claim also fails because he has not alleged any actual damages. Section 2605 provides: "Whoever fails to comply with this section shall be liable to the borrower . . . [for] any actual damages to the borrower as a result of the failure . . ." 12 U.S.C. § 2605(f)(1)(A).  "However, alleging a breach of RESPA duties alone does not state a claim under RESPA.  Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages." *Swanson v. EMC Mortgage Corp.*, 2009 WL 3627925, at *7 (E.D. Cal. 2009).  Other courts have dismissed RESPA claims at the pleading stage where the plaintiff fails to allege facts sufficient to demonstrate that the breach resulted in actual damages.  *See Molina v. Washington Mutual Bank*, No. 09–CV–00894–IEG (AJB), 2010 WL 431439 at *7 (S.D.Cal. Jan.29, 2010) (collecting cases); *LAL v. Am. Home Serv. Inc.*, 680 F. Supp.2d 1218, 1223 (E.D. Cal. 2010) (dismissing claim for alleged violation of RESPA where plaintiff failed to plead facts to show, among other things, that he suffered harm as a result of notice failure); *Allen v. United Financial Mortgage Corp.*, 660 F. Supp.2d 1089, 1097 (N.D. Cal. 2009) (same).  Here, Plaintiff did not allege that he suffered any actual damages as a result of Defendants' alleged failures to respond to his faxes, letters, and other requests.  He asks only for damages in the amount of $1,000 per occurrence. Compl., ¶ 8.4.  These statutory damages are recoverable only where a plaintiff establishes a pattern and practice of RESPA violations, 12 U.S.C. § 2605(f)(1)(B), which Plaintiff has not

---

refers in the plural to "Plaintiffs sent multiple mailings of letters to all Defendants," he is referring to an "Affidavit of Right to Cancel" signed by Brenda Burton, and a "CEASE AND DESIST" notice sent by Steve Fritts.  Compl., ¶ 3.55 (citing to Exs. HH & II).  Brenda Burton and Steve Fritts are not parties to this action.

sufficiently alleged.[18]  As noted above, the foreclosure proceedings complied with the Idaho

Trust Deeds Act and Defendants were not required to "postpone the Trustee's Sale" (which is

one of the actions Plaintiff argues violated RESPA).

 Finally, the claim should be dismissed, regardless, as to any entity that is not a "servicer"

of the loan, defined as "the person responsible for servicing of a loan" by "receiving any

scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making

the payments of principal and interest and such other payments with respect to the amounts

received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. §

2605(i)(3).  *See, e.g.*, *Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F.Supp.2d 1191, 1199

(E.D.Cal. 2009) (dismissing RESPA claim where plaintiffs made allegations that they "are not

certain at this time exactly which of [d]efendants was actually the servicer of the loan at any

given time").

 For the foregoing reasons, it is recommended that the district court find Plaintiff's claim

under RESPA fails to state a claim upon which relief may be granted.

**H.** **Idaho Consumer Protection Act ("ICPA")**

 Plaintiff's sixth cause of action alleges consumer protection claims against all

Defendants, which, as discussed above, the Court has construed as claims brought pursuant to

the  Idaho Consumer Protection Act, I.C. § 48–601 *et seq*.  The ICPA prohibits unfair methods of

---

[18]  Although Plaintiff alleges several communications, the servicer responded to many of
his requests, such that the Court does not find sufficient allegations of a pattern or practice to
violate RESPA.

competition and unfair or deceptive acts or practices in the conduct of trade or commerce within the State of Idaho. *See State ex rel. Kidwell v. Master Distributors, Inc.*, 615 P.2d 116, 122 (Idaho 1980); *see also* I.C. § 48-603(E). The Complaint alleges that Defendants' "acts constitute unfair and deceptive practices that occur in their trade or commerce, which amounts to unlawful Usury and unjust enrichment." Compl., ¶ 9.4.

Initially, the Court finds that Plaintiff lacks standing under the ICPA to assert a claim against any party except Silver State, its successors, and his loan servicer. To have standing under the ICPA, "the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfair or deceptively." *Taylor v. McNichols*, 243 P.3d 642, 661 (Idaho 2010) (*citing Haskin v. Glass*, 640 P.2d 1186, 1189 (Idaho Ct.App. 1982)); Idaho Code. § 48–608(1) ("Any person who purchases or leases good or services and thereby suffers . . . ."). Plaintiff has not alleged that he was in a contractual relationship with Northwest, the trustee on the Deed of Trust.

However, even if the requisite standing could be argued to exist as against Silver State, Plaintiff's particular ICPA allegations do not support a claim against Silver State or the other Defendants. First, Plaintiff's allegations for violation of the ICPA are tied to his argument that Defendants did not have the authority to foreclose on the Deed of Trust. *See* Compl. ¶ 9.5 (alleging as part of ICPA claim that Defendants have "perpetrated a willful fraud by first collecting on a Mortgage Note that they did not have standing therein to collect and second did not have standing to foreclose on the property"). Silver State was not involved in the foreclosure, and, as successor trustee, Northwest had the authority to initiate and conduct the

foreclosure proceedings under the terms of the Deed of Trust and the Idaho Trust Deeds Act, as discussed above.  Moreover, to the extent Plaintiff's ICPA claim rest on breach "of fiduciary duties to [Plaintiff]", the Court has ruled that Defendants owed Plaintiff no fiduciary duties.  For the foregoing reasons, Plaintiff's ICPA claim fails to state a claim upon which relief may be granted against the Defendants.

## I.      Intentional Infliction of Emotional Distress

Plaintiff's seventh cause of action alleges intentional infliction of emotional distress for "poor treatment of [Plaintiff] during this difficult time."  Compl., ¶ 10.2.  Specifically, Plaintiff asserts that Defendants' "callous attitude and clear unwillingness to work with [Plaintiff] caused Plaintiffs significant emotional distress."  *Id.*  Plaintiff alleges that Defendants' failure to stop the foreclosure sale after being served with a complaint contributed to Plaintiff's distress.  *Id.* ¶ 10.3.  Plaintiff further alleges that "[t]his distress was manifested by depression, sadness, frustration, and anger."  Compl., ¶ 10.2.

"To prevail on a claim for intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe."  *Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 396 (Idaho 2010) (internal citations omitted).  "To be actionable, the conduct must be so extreme as to 'arouse an average member of the community to resentment against the defendant,' and 'must be more than unreasonable, unkind, or unfair.'"  *Id*. at 397 (citing 86 CJ. S. Torts § 74 (2009) (citations omitted)).

Plaintiff's claim fails for several reasons.  Plaintiff's ICPA claim is based, in large part, on the failure to stop the trustee sale while Plaintiff was attempting to negotiate a loan modification.  However, the Complaint contains no allegations that Northwest, as successor trustee, had any contact with Plaintiff or undertook any action other than the foreclosure proceedings authorized by the Deed of Trust and the Idaho Trust Deeds Act.  Moreover, even assuming that Northwest knew of Plaintiff's attempts to obtain a loan modification, its continuation of the foreclosure proceeding does not rise to the level of "outrageous" conduct necessary to state a claim for intentional infliction of emotional distress.  For the foregoing reasons, Plaintiff's complaint fails to state a claim upon which relief may be granted for intentional infliction of emotional distress.

## J.    Negligent Infliction of Emotional Distress

Plaintiff's eighth cause of action alternatively alleges negligent infliction of emotional distress.  To support that claim, Plaintiff must allege:  "(1) a duty recognized by law requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the conduct and the plaintiff's injury; and (4) actual loss or damage." *Johnson v. McPhee*, 147 Idaho 455, 210 P.3d 563 (Idaho Ct.App. 2009) (citing *Brooks v. Logan*, 127 Idaho 484, 903 P.2d 73, 78 (Idaho 1995); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank*, 119 Idaho 171, 804 P.2d 900, 904–05 (Idaho 1991); *Nation v. State Dept. of Correction*, 144 Idaho 177, 158 P.3d 953, 965 (Idaho 2007)).  Plaintiff must also allege "some physical manifestation of [his] emotional injury."  *Id.* (citations omitted).

**REPORT AND RECOMMENDATION - 30**

There is no dispute that the loan was in default, and Plaintiff has not established that Northwest or any other Defendant had a duty to postpone the foreclosure sale.  To the extent that Plaintiff's claim is based on some other action, the factual allegations are too vague to state such a claim for relief as well.  For the foregoing reasons, the motion to dismiss Plaintiff's negligence claim should be granted.

## K.      Conclusion

Although the Court is mindful of the frustration experienced by homeowners going through the foreclosure process, not every action taken by the foreclosing entities is sufficient to state a cause of action for restitution of property and/or damages.  Here, the state court has repeatedly upheld the foreclosure on the Property and Plaintiff gave up his interest in the Property before he came to seek relief in federal court.  Although lengthy, the Complaint, even considered with the many exhibits submitted with each version, simply does not contain allegations sufficient to state claims for relief.

## L.      Leave to Amend

Dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment."  *Harris v. Amgen, Inc*., 573 F.3d 728, 737 (9th Cir. 2009) (issued 2 months after *Iqbal*).  The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc*., 911 F.2d 242, 247 (9th Cir. 1990).  Here, Plaintiff has submitted three versions of his

complaint; thus he has already had opportunities to refine his claims.  In this Report, the Court

has explained why none of his claims can survive both as a preclusion matter and on the merits.

However, because Plaintiff has had opportunities to amend previously, and because res judicata

applies to the claims he raises in this case, it is recommended that the dismissal of all claims in

the Complaint be entered without further leave to amend.

**RECOMMENDATION**

IT IS THEREFORE RECOMMENDED that the District Court grant Defendants' Motion to Dismiss (Dkt. 111) pursuant to Federal Rule of Civile Procedure 12(b)(6).  Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition may "serve and file specific, written objections, not to exceed twenty pages" and the other party "may serve and file a response, not to exceed ten pages." Accordingly, any objection by Plaintiff shall be *filed with the Court* on or before **September 10, 2012**,[19] any response by Defendants is due by **September 21, 2012.**



DATED:  **August 24, 2012**

_____

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[19]  This deadline allows Plaintiff fourteen days, plus additiona days for mailing, because he is appearing *pro se* and cannot use the electronic docketing system.  *See* Fed. R. Civ. P. 6 (explaining how to compute time for motions and other filings).  Plaintiff has, in the past, requested an extension of time and then failed to meet the deadline he requested.  *See, e.g.*, Dkts. 113 & 117.  At this stage of the proceeding the facts, claims, and arguments are well-known to the parties and *the Court will not allow any extensions of the deadlines* to file an objection or response.  That means Plaintiff's objection, if any, *must arrive at the Clerk's Office* on or before September 10, 2012 to be timely filed such that it will be considered.  Any response by Defendants should be submitted on CM/ECF on or before September 21, 2012.